IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-822-NJR-DGW |
| ) | |
| WILLIAM WELBORN, JOHN TROST, ) | |
| STEVEN RITZ, MICHAEL ) | |
| MOLDENHAUER, MISTY THOMPSON, and ) | |
| JANA SOUTH, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants John Trost, Steven Ritz, Jana South, and Michael Moldenhauer (Doc. 63), and filed by Defendants William Welborn and Misty Thompson (Doc. 68) be **GRANTED IN PART and DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

## INTRODUCTION

Plaintiff, Steven Jordan, filed a Complaint on July 28, 2015 pursuant to 42 U.S.C. § 1983 alleging that he was subjected to insufficient medical care while he was housed at the Menard Correctional Center beginning in June, 2014 (Plaintiff is currently housed at the Hill Correctional Center). He is proceeding on one count of deliberate indifference to a serious medical need related to a fall that occurred in June, 2014. Plaintiff alleges that he experienced an episode of heat stroke and lost consciousness. When he regained consciousness, Defendant Welborn, a correctional sergeant, ignored his obvious need for medical attention. When he saw Defendant South, a nurse, 6 days later, she failed to refer him to a doctor and failed to give him pain medication. When Plaintiff saw Defendant Trost, a doctor, 10 days later, he was prescribed ineffective pain medication and physical therapy that did not materialize until 5 months later. He complained about the lack of sufficient pain medication to Defendants Trost, South, Moldenhauer (a nurse practitioner) and Thompson (a nurse), all of whom did nothing. Defendant Trost, however, did order an MRI but Defendant Ritz (also a doctor) did not authorize the procedure.

All Defendants seek summary judgment on the issue of exhaustion of administrative remedies (Docs. 63, and 68). After a number of extensions of time, Plaintiff filed a response on March 21, 2016 (Doc. 77) to which Defendants Moldenhauer, Ritz, South, and Trost, replied (Doc. 78). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on June 23, 2016 (Doc. 79).

#### FINDINGS OF FACT

There are 5 grievances filled out by Plaintiff that are dated prior to the filing of the Complaint on July 28, 2015. These grievances are dated June 21, 2014 (Doc. 64-2, pp. 14-15), June 26, 2014 (Doc. 77, pp. 34-35), November 25, 2014 (Doc. 77, pp. 33), March 13, 2015 (Doc. 64-2, pp. 5-6) and March 13, 2015(second) (Doc. 64-2, pp. 10-11).

**1.      June 21, 2014 Grievance (Doc. 64-2, pp. 14-15):**

In this grievance, Plaintiff states that he was denied immediate medical attention by "staff" on June 20, 2014 after he fainted. Plaintiff states that **Defendant Welborn**, the sergeant on duty who responded, was belligerent and told Plaintiff that he believed he was "faking" and that he would not summon medical personnel. The grievance goes on to indicate that Defendant Welborn said he would submit his name to medical personnel the next day but he was not examined the next morning. Plaintiff sought immediate medical attention and wanted Defendant Welborn penalized.

The grievance was marked as an emergency and, on June 26, 2014, the Warden decided that it was an emergency and expedited the handling of the grievance. On that same day, the grievance officer found that the grievance could not be substantiated because Plaintiff was seen by a nurse on June 24, 2014 and that further tests and follow up care were ordered (Doc. 64-2, p. 13). The Warden concurred with this conclusion on July 14, 2014[1] and Plaintiff appealed to the

---

[1] After the Warden signed the grievance (on July 14, 2014), it appears that the matter was forwarded to Angela Crain, the nursing supervisor, who responded to the grievance on August 21, 2014 (Doc. 64-2, p. 16). It is unclear from the record when the grievance was forwarded to Ms. Crain or why her response was rendered after the grievance officer's June 26, 2014 response. Plaintiff may have submitted the grievance through the regular channels after he received the Warden's response as it appears that he submitted it to Mrs. Cowans, a case worker supervisor, who received it but had not rendered a response as of September 25, 2014 (Doc. 77, pp. 43-44).

Director (Administrative Review Board (ARB)) on October 2, 2014 (*Id.*). The grievance was received by the ARB on October 8, 2014 and it was denied as untimely on October 21, 2014 (*Id.* p. 12).

Plaintiff testified that he was transported from Menard CC in July 2014 on a court writ for a 2 to 3 week period. He indicates that he did not receive the July 14, 2014 response from the Warden until he returned to Menard and not until his mail had been sent to the location of the writ and then forwarded to Menard CC.[2] In an affidavit, Plaintiff specifies that he was transported to Stateville Correctional Center on July 9, 2014 and returned to Menard CC on July 23, 2014 (Doc. 77, p. 19). He further states that his mail did not reach him until October 2014. Defendants indicate that Plaintiff did not submit a form in 2014 that would have allowed his mail to be sent to him where he was located, instead of just being held at Menard CC until his return. Thus, they argue that Plaintiff should have received his mail upon his return to Menard at the end of July 2014.[3]

**2.     June 26, 2014 Grievance (Doc. 77, pp. 34-35):**

In this grievance, Plaintiff complained about **Defendant South's** actions on that same day. The statements made in this grievance track those made in the Complaint. There is no counselor's or grievance officer's signature on this grievance. At the hearing, Plaintiff testified that he placed this grievance in the bars of his cell (he was housed in the North 2 wing, either gallery 1 or 5) but that he never received a response.

---

[2] Plaintiff testified that he did not receive it until 4 months later; this estimation does not appear accurate.

[3] The documents that the Court assumes Plaintiff submitted to demonstrate that his mail was forwarded in 2014 are unreadable (Doc. 77, pp. 38-39). A response to a November 6, 2015 letter requesting documentation as to the mail indicates that there were no such requests made in 2014 (Doc. 77, p. 42).

3.     **November 25, 2014 Grievance (Doc. 77, pp. 33):**

In this grievance, Plaintiff complained that he was being denied an MRI for his lower back injury. The grievance names both **Defendant Trost and Defendant Ritz**. The grievance was marked as an emergency and the Warden responded that the matter was not an emergency on December 4, 2014. Plaintiff testified that the grievance was not returned to him but was rather forwarded directly to his counselor. When he received the response from the counselor, who responded on December 16, 2014, he made a copy through the law library and then put it in his bars to go to the grievance officer. He received no response from the grievance officer. Plaintiff admits that he never appealed this grievance, in emergency or regular form, to the ARB.

4.     **March 13, 2015 Grievance (Doc. 64-2, pp. 5-6):**

In this grievance, Plaintiff states that he suffered an injury on November 20, 2014 to his shoulder when he attempted to use his sink as a ladder to get to his upper bunk. The grievance does not name any particular person but does request that a ladder be installed. Plaintiff's counselor responded on March 16, 2015 and a grievance officer responded on June 15, 2015 (Doc. 64-2, p. 4). The warden concurred on June 22, 2015 and Plaintiff appealed to the ARB on June 29, 2015 (*Id.*). The ARB received the grievance on July 2, 2015 and responded on November 2, 2015 (*Id.* p. 3).

5.     **(Second) March 13, 2015 Grievance (Doc. 64-2, pp. 10-11):**

This second grievance dated March 13, 2015 complained of the delay in receiving physical therapy as ordered by **Defendant Trost** and the failure of Dr. Trost to order other things that would alleviate his back pain. A counselor responded on March 30, 3015 and the grievance officer responded on June 15, 2015 (Doc. 64-2, p. 8). The warden concurred on June 22, 2015 and Plaintiff appealed to the ARB on June 29, 2015 (*Id.*). The ARB responded on November 2,

2015.

At the June 23, 2016 hearing, Plaintiff appeared credible in his statements concerning the steps he took to submit his grievances in the correct manner. While the Court is mindful that Plaintiff did not complain to his counselor about the lack of responses to some of his grievances (and may have made such complaints about other grievances), Plaintiff appeared genuine in his statements concerning the grievances at issue.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*,

407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, §

504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

      An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance

process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

In his response to the Motions for Summary Judgment (Doc. 77) and a proposed Second Amended Complaint (Doc. 76), Plaintiff indicates that he is no longer pursuing claims against Defendants Thompson and Moldenhauer. The Court finds that, even if Plaintiff had elected to move forward on his claims against these Defendants, he failed to exhaust his administrative remedies because he never filed a grievance regarding these two Defendants related to the claims in this suit.

The only grievances that are relevant to this matter are the June 21, 2014 grievance (as to Defendant Welborn), the June 26, 2014 grievance (as to Defendant South), and the November 25, 2014 grievance (as to Defendants Trost and Ritz). The March 13, 2015 grievances were fully exhausted after this lawsuit was filed. As such, they could not be used to exhaust claims made in this suit.

As to the claims against Defendant Welborn, Plaintiff submitted the June 21, 2014 grievance and it was handled on an emergency basis. When Plaintiff appealed the grievance officer's expedited response to the Warden and received an unfavorable institutional response, he appealed the matter to the ARB which found that the appeal was untimely (having been submitted beyond the 30 days provided by the Administrative Code). This grievance also appears to have been processed by Plaintiff's counselor, who sought information from Ms. Crain (which was given on August 23, 2014). Plaintiff explained that there was delay in receiving the Warden's response because his mail was forwarded to the location of the writ (in July 2014) and he only received the response when he returned to Menard and the mail was forward to him at that location. Notwithstanding the discrepancies in the dates provided by Plaintiff, the Court

finds Plaintiff credible in his claim that there was a delay in the mail and that he forwarded an appeal to the ARB shortly after he received the response from the Warden. It does not appear unusual to the Court that the mail and grievance procedure at Menard CC is hampered by delay and misdirection, especially in light of Plaintiff's brief transfer to Stateville CC on a Court writ. It also does not appear unusual for the Plaintiff to mis-remember exact dates for events that occurred two years ago. At the hearing Plaintiff appeared sincere and truthful in his recounting of the events during that time period. By failing to provide Plaintiff, in a timely manner, with the Warden's final response on July 14, 2014, the process was rendered unavailable and Plaintiff is found to have exhausted this grievance.

Plaintiff indicated that the June 26, 2014 grievance was submitted by placing it in his bars but that no response was given. By failing to respond, the process was rendered unavailable as to this grievance and Plaintiff is found to have exhausted as to his claims against Defendant South.

The November 25, 2014 grievance, complaining of the care provided by Drs. Trost and Ritz, also is deemed exhausted.[4] This grievance was marked as an emergency and received by Plaintiff's counselor – it was also forwarded to the Warden who did not consider it an emergency. After the Warden rendered his non-emergency finding, the counselor provided a response. As indicated on the form, Plaintiff was instructed to "submit this grievance in the normal manner" once the matter was not deemed an emergency (Doc. 77, p. 33). Plaintiff's

---

[4] This grievance only concerned the failure to approve an MRI. Plaintiff's complaints about the lack of physical therapy and other medical care related to his fall (and subsequent injuries) are contained in the March 13, 2015 grievances that were exhausted after this suit was filed. However, Plaintiff appears to be complaining of an on-going medical condition related to his fall in June 2014; as such, the November 25, 2014 grievance should be sufficient to exhaust all claims against Dr. Trost related to the medical care that he received related to his fall. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (noting that a claim accrues on the Plaintiff knew he had a medical problem that required attention and continues until he is treated).

counselor apparently elected to respond to the grievance without any prompting from Plaintiff. Once Plaintiff received his counselor's response, he attempted to appeal to the grievance officer by placing the grievance in his bars. He did not receive a response from the grievance officer. Plaintiff did not appeal this grievance to the ARB.

The regulations provide that if an inmate is dissatisfied with a Warden's response, he must appeal the decision to the ARB. ILL. ADMIN. CODE TIT. 20, § 504.850(a). As such, according to the Code, Plaintiff should have appealed the Warden's "non-emergency" finding to the ARB and Plaintiff was not required to file any additional (non-emergency) grievance. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("There is nothing in the current regulatory text, however, that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."); *See e.g. Glick v. Walker*, 385 Fed.Appx. 579, 583 (7th Cir. 2010) (finding that regulations did not require an inmate to follow the normal grievance procedure once an emergency grievance is deemed not an emergency and that decision is appealed to the ARB); *Muhammed v. McAdory*, 214 Fed.Apps. 610, 612 (7th Cir. 2007) (same finding on different facts). However, the grievance form itself instructs Plaintiff to submit the grievance through the "normal manner" – i.e. by submitting it to his counselor and then the grievance officer. By providing different instructions, prison authorities have created a confusing scenario: should Plaintiff appeal to the ARB or submit the grievance to his counselor or both? The prison, at least, believed that Plaintiff should submit to his counselor and his counselor automatically, without prompting from Plaintiff, responded to the grievance after the Warden rendered a non-emergency response. In any event, there is no regulation that would prevent Plaintiff from filing a second or subsequent "normal" grievance to his counselor regarding the same claim as an emergency grievance.

At the hearing, Defendants argued that because Plaintiff failed to appeal the emergency grievance to the ARB, he forfeited the grievance process and has not exhausted. In light of the confusing instructions, the prison's actions, and Plaintiff's attempt to appeal the normal grievance to the grievance officer, the Court finds that Plaintiff's failure to appeal the non-emergency finding to the ARB is not fatal to his claim because "the process that exists on paper becomes unavailable in reality." *Kaba*, 458 F.3d at 684; *See Cooper v. Evans*, 2010 WL 3895702, *3 (S.D. Ill. 2010) (finding that by instructing an inmate to use a form to which he had no access, even if it was error, rendered the grievance process unavailable). Even if Plaintiff was required to appeal to the ARB once his emergency grievance was deemed not an emergency,[5] by failing to respond to the "normal" grievance, the prison rendered the process unavailable.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants John Trost, Steven Ritz, Jana South, and Michael Moldenhauer (Doc. 63), and filed by Defendants William Welborn and Misty Thompson (Doc. 68) be **GRANTED IN PART** as to Defendants Moldenhauer and Thompson **and DENIED IN PART** as to Defendants Trost, Ritz, South, and Welborn, that Defendants Moldenhauer and Thompson and the claims against them be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

---

[5] In *Ross v. Blake*, the Supreme Court recently reiterated that there are no "special circumstances" exceptions to the PLRA's exhaustion requirement that would allow for judge-made exceptions. __ U.S. __, 136 S.Ct. 1850, 1856-1857 (2016). The Court went on to note, however, that "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. at 1859.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 7, 2016**

**DONALD G. WILKERSON**
**United States Magistrate Judge**