IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-822-NJR-DGW |
| | ) |
| WILLIAM WELBORN, JOHN TROST, | ) |
| M.D., STEVEN RITZ, M.D., and | ) |
| JANA SOUTH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the motion for summary judgment filed by Defendants Steven Ritz, Jana South, and John Trost on November 4, 2016 (Doc. 110)[1] and Plaintiff Steven Jordan's responses to the motion (Docs. 156 and 161). For the reasons set forth below, the motion is granted.

### BACKGROUND

Plaintiff Steven Jordan, an inmate currently confined at Hill Correctional Center, is proceeding on a second amended complaint (Doc. 96) filed pursuant to 42 U.S.C. § 1983. His claim relates to a fall that occurred on June 20, 2014, while he was housed at Menard Correctional Center. Jordan claims that he passed out in his cell from heat stroke while standing at his sink, causing him to fall, and that Sergeant Welborn did not summon medical care. When he saw Nurse South and Dr. Trost a few days later, they

---

[1] The motion for summary judgment (Doc. 119) by the remaining defendant, William Welborn, will be addressed in a separate memorandum and order.

did nothing meaningful to address his pain. And, Jordan claims, Dr. Ritz failed to approve necessary diagnostic testing, contributing to his prolonged pain and suffering. Jordan is proceeding on one count alleging that each Defendant was deliberately indifferent to his serious medical needs (Doc. 95).²

One week prior to his fall, Jordan saw Dr. Trost for complaints of chest pain that lasted less than one minute, lightheadedness, and shortness of breath (Doc. 111-1, p. 3). Dr. Trost gave Jordan a one-month prescription for ibuprofen (*Id.*). An x-ray also was taken that showed no active pulmonary disease (*Id.*). On June 24, 2016, four days after his fall, Jordan saw a nurse practitioner in a follow-up appointment for the chest pain, told her about his fall and back injury, and was directed to continue taking ibuprofen (*Id.*, p. 4).

Jordan saw Nurse South on June 26, 2014, for complaints of back pain due to his reported fall. Nurse South checked his vitals and noted a slightly elevated blood pressure and slow gait (Doc. 111-3, p. 2). She also observed two marks on his back that "looked like old road rash without infection, and did not appear to be the result of a fall" (*Id.*). Nurse South did not observe any abrasion marks or any other indications typically associated with a fall. She believed his complaints were inconsistent with her findings and only offered him ibuprofen (Jordan told her that he was already taking Tylenol) (*Id.*). When Jordan opted to see a doctor, Nurse South became angry and had him

---

² In his response to the instant motion for summary judgment, Jordan indicated that he had outstanding discovery disputes. The discovery issues related to the moving Defendants were resolved on June 13, 2017, and Jordan was permitted to file a supplemental response (Doc. 161). Jordan filed that supplemental response on August 1, 2017 (Doc. 168). Thus Jordan's request for additional discovery is denied as moot.

removed from the healthcare unit by correctional officers[3] (Doc. 156-2, p. 6).[4] As he was leaving, Nurse South noticed that he was walking normally (Doc. 111-3, p. 3), although Jordan was being hurried along by officers regardless of his pain (Doc. 156-2, p. 6).

Shortly thereafter, Jordan was transferred to Stateville Correctional Center, returning to Menard on July 23, 2014. On July 25, 2014, he saw Dr. Trost and again complained of low back pain due to the fall (Doc. 111-1, p. 4). Dr. Trost did not observe antalgic gait, which is an abnormal gait indicative of low back pain (*Id.*, pp. 2, 4-5). He nonetheless diagnosed low back pain, i.e., a muscle strain or a lumbar sprain soft tissue injury, and directed conservative treatment of ibuprofen, Robaxin (a muscle relaxant), light exercises, and no strenuous activities (*Id.*, p. 4-5). Jordan told Dr. Trost that ibuprofen and Tylenol were not alleviating his pain (Doc. 156-2, p. 6).

Jordan again was seen for low back pain on August 12, 2014 (Doc. 111-1, p. 5). The medical technician did not observe any problems with Jordan's gait and, like Dr. Trost, directed conservative treatment even though Jordan reported a six out of ten pain level (*Id.*, p. 5). A month later, Jordan appeared with greater pain, eight out of ten, and was referred to a doctor or nurse (*Id.*, pp. 5-6). When a nurse practitioner saw Jordan on September 23, 2014, he again was prescribed Robaxin but with Prednisone, a steroid used for muscle inflammation (*Id.*, p. 6). The nurse observed that Jordan sat down with

---

[3] Nurse South avers that Jordan became belligerent, that she feared for her safety, and that she had him removed (Doc. 111-3, p. 2-3). The Court, however, must construe the evidence in the light most favorable to the non-movant, Jordan.

[4] Jordan's affidavit contains extraneous material such as restatements of Defendants' affidavits, statements that could not be based on personal knowledge, and argument (*see, e.g.*, ¶¶ 1-4, 25, 26, 40). These statements will not be considered. *See* FED. R. CIV. P. 56(c)(4). In addition, Jordan's "statement of disputed factual issues" contains no citation to the record. Therefore, those facts will be considered undisputed for purposes of the motion. *See* FED. R. CIV. P. 56(e)(2).

ease but that he was walking slowly. The first observation is counter-indicative of back pain and the second, by itself, is not indicative of back pain (*Id.*, p. 6). Nonetheless, an x-ray of Jordan's thoracic and lumbar spine was ordered, and no abnormalities were revealed (*Id.*, p. 6). A couple of weeks later, Jordan again presented with low back pain. A neurological test was negative for neurological deficits, but Dr. Trost still prescribed ibuprofen and Mobic (an anti-inflammatory) (*Id.*, pp. 6-7). At some point in October 2014, Jordan told Dr. Trost he could not do any light exercises because of excruciating pain.

In light of Jordan's continued complaints of pain without any physical or neurological evidence thereof, Dr. Trost elected to recommend an MRI, which he believed was a "likely overtreatment of Mr. Jordan's symptoms, and unlikely to reveal any physical problems" (*Id.*, p. 8). The recommendation was sent for collegial review to Dr. Ritz (*Id.*). Dr. Ritz denied the request because of the lack of neurological deficits but suggested that Jordan undergo physical therapy (*Id.*, pp. 8-9). Dr. Ritz noted that an MRI is "indicated for patients that will likely require back surgery" and that Jordan was not such a candidate because of the lack of any physical findings (Doc. 111-2, p. 2).

Jordan again was examined on December 1, 2014, after he fell off a top bunk and injured his shoulder. Dr. Trost noted no improvement in his back condition; he was prescribed Naproxen, another anti-inflammatory, and his shoulder was x-rayed (Doc. 111-1, p. 9). The shoulder x-ray did not reveal any injury (*Id.*, p. 9).

On January 6, 2015, Jordan agreed to physical therapy, which was approved by Dr. Ritz on April 2, 2015 (*Id.*, p. 10). Jordan agreed to physical therapy because he "was

willing to try anything to alleviate the suffering, as well as follow Doctor's recommendation," and because he believed he would receive no other pain management or treatment options (Doc. 156-2, p. 10). On April 17, 2015, Jordan was evaluated by a physical therapist who concluded—like Dr. Trost—that his complaints were consistent with lumbar muscle sprain or strain (Doc. 111-1, p. 10). Jordan was instructed on how to perform home exercises (*Id.*). Dr. Trost did not believe that Jordan's injuries warranted either a front cuff permit or a low bunk/low gallery permit based on his examinations and Jordan's alleged injuries (*Id.*, pp. 10-11).

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Jordan must show first that his condition was "objectively, sufficiently serious," and second that "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

A serious medical need is one "a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v.*

*Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). "Even if a defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

**A.     Objectively Serious Medical Condition**

Defendants first argue that at the time Jordan was treated by Nurse South, he did

not present with a serious medical condition.⁵ Nurse South noted merely that Jordan's bruises were not consistent with a fall and looked like old "road rash" without infection. Thus, Nurse South found no objectively serious medical need for treatment, especially for a referral to a doctor or nurse practitioner. On the other hand, Jordan told Nurse South that his pain was a ten on a ten point scale and that he "barely could walk," but states that she disbelieved him (Doc. 156-2, pp. 5-6).

As the Seventh Circuit has explained, "turning a blind eye to a prisoner's complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life–threatening and the failure to treat does not exacerbate the condition." *Diaz v. Godinez*, ___ F. App'x ___, 2017 WL 2116175, *2 (7th Cir. 2017). "Pain is a 'uniquely subjective experience,' and it is not appropriate to conclude at summary judgment that nontrivial pain alleged by an inmate is not deserving of treatment." *Id.* The fact that Jordan thereafter received medical attention for his back condition further supports a finding that he had an objectively serious medical condition. *See id.* (quoting *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013) ("the prescription Diaz received from Menard is 'evidence that he really did have back pain'")). Therefore, the Court finds Jordan had an objectively serious medical need when he presented to Nurse South.

**B.     Deliberate Indifference**

Even if Jordan had a sufficiently serious medical need, he still must prove that prison officials acted with a sufficiently culpable state of mind. *Greeno*, 414 F.3d at

---

⁵ Defendants do not argue that Jordan lacked a sufficiently serious medical need with regard to Dr. Trost and Dr. Ritz.

652-53. The Court finds that Jordan has failed to meet his burden in this respect. This matter presents a classic example of an inmate who disagrees with the course of treatment and demands specific treatment and diagnostic tests. Neither Jordan's disagreement with the prescribed treatment nor his demands for certain medical care, however, supports a finding that his constitutional rights were violated. Rather, the evidence establishes that Defendants elected to treat his condition conservatively by providing pain medication, trying various anti-inflammatory medications, and directing limited physical activity. This course of treatment was indicated because physical and neurological examinations did not reveal any abnormalities consistent with Jordan's reported statements of pain. When Jordan's reports of pain did not diminish, additional diagnostic tests were recommended; however, Defendants opted to recommend physical therapy instead. In light of the care Jordan did receive, which he does not dispute, no jury would find that any of the moving Defendants were deliberately indifferent to his serious back pain.

First, notwithstanding Jordan's report of extreme pain, the physical examinations and observations by prison staff were inconsistent with Jordan's subjective complaints. Nurse South conducted a physical exam of Jordan and found that the abrasions on his back were not the result of the fall. While Nurse South observed Jordan's limitation in his movement (because he had a slow gait), she elected to treat this problem by prescribing ibuprofen. Jordan has not shown how this is so plainly inappropriate as to permit the inference that Nurse South intentionally or recklessly disregarded his needs

or that her treatment decisions were not based on medical judgment. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Second, Dr. Trost examined Jordan a number of times and likewise found that his physical and neurologic examinations were inconsistent with his subjective complaints of pain. An inmate is not required to provide a doctor with "objective" evidence of pain in order to be treated, because subjective complaints of pain are often the only indication of such pain. *See Greeno*, 414 F.3d at 655. On the other hand, however, a medical doctor is not required to blindly and immediately prescribe the most potent pain medication available. A medical professional is only required to act in a manner that does not exhibit deliberate indifference. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998) ("A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances'")).

Here, Dr. Trost did prescribe pain medication in light of Jordan's complaints of pain. That the medication did not eradicate Jordan's pain is not indicative of deliberate indifference. *See e.g. Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

Jordan was diagnosed with a soft tissue injury, given pain medication,[6] muscle relaxers, and anti-inflammatory medications, and told to perform light exercises and avoid extreme physical activities. Dr. Trost, based on his medical judgment, believed that Jordan's soft tissue injury and associated pain would diminish over time with the treatment that was provided.

Moreover, Dr. Trost did not simply persist in a course of treatment that was ineffective over time. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (noting that a doctor should not continue an ineffective course of treatment). Rather, Dr. Trost tried different medications (Robaxin to Robaxin/Prednisone to Mobic to Naproxen). When none of these medications or suggestions appeared to alleviate Jordan's complaints, he suggested both an MRI and physical therapy. There is no showing that in pursuing this course of treatment (which changed over time) Dr. Trost failed to use medical judgment or significantly departed from professional standards or practices. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Jordan further complains that Dr. Trost failed to timely refer him to physical therapy. In his deposition, Jordan stated that Dr. Trost first discussed physical therapy in November 2014, but he did not begin such therapy until April 23, 2015. In his affidavit, however, Dr. Trost attested that physical therapy was a secondary treatment option if medication therapy was not working and if Jordan could tolerate significantly more than very mild exercises and stretching (Doc. 111-1, p. 5). Dr. Trost noted that physical

---

[6] There is no evidence that Jordan was without pain medication during the relevant time period. Jordan states, however, that the medication was uniformly ineffective. While this contention does give the Court some pause, the records as a whole reveal that pain medication was not the only course of treatment provided and that Dr. Trost believed that treatment, taken as a whole, would resolve Jordan's pain.

therapy typically involves an intense stretching and exercise regime that should not be attempted by someone who cannot tolerate mild exercise; if fact, physical therapy can aggravate rather than alleviate a patient's condition (*Id.*). In October 2014, Jordan told Dr. Trost that he could not perform the light exercises and stretching that Dr. Trost had previously recommended because the pain was too excruciating (*Id.*, p. 7). Thus, Dr. Trost attests, he would not have referred Jordan to physical therapy at that time because the intensive exercise involved would likely cause more harm than good (*Id.*). Dr. Trost's decision to withhold physical therapy until Jordan was physically ready for it was not so plainly inappropriate as to permit the inference that Dr. Trost intentionally or recklessly disregarded Jordan's needs.

Finally, Dr. Trost's and Dr. Ritz's decisions to forego an MRI and Dr. Trost's refusal to approve a low bunk or front-cuff permit also do not demonstrate deliberate indifference. An MRI is merely a diagnostic tool and the decision to forego it is "a classic example of a matter of medical judgment." *Estelle*, 429 U.S. at 107. This decision was based on the lack of neurological or physical findings that would necessitate a test typically used to evaluate surgical potential. There is no evidence that Jordan's condition required surgery. Moreover, Dr. Trost's decision not to approve a low bunk or front-cuff permit was based on his judgment that Jordan's physical ailments would not warrant such accommodations. Again, there is no evidence that Dr. Trost or Dr. Ritz did not use

reasonable medical judgment. Jordan simply is not entitled to demand specific medical care. *Holloway*, 700 F.3d 1073-74.[7]

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Defendants Ritz, South, and Trost on November 4, 2016 (Doc. 110) is **GRANTED**. The Clerk shall enter judgment for Defendants Ritz, South, and Trost and against Plaintiff Steven Jordan at the conclusion of this matter. The only claim remaining is Jordan's deliberate indifference claim against Defendant Welborn.

**IT IS SO ORDERED.**

DATED:   September 18, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[7] In his supplement (Doc. 168), Jordan claims that Drs. Trost and Ritz were deliberately indifferent for failing to refer him to a specialist and/or failing to follow policy. These claims are not supported by any legal authority or argument and will not be considered. *See* Local Rule 7.1(e) ("Any brief in support of or in opposition to a motion for summary judgment shall contain citation to relevant legal authority and to the record, together with any affidavits or documentary material designated pursuant to Federal Rule of Civil Procedure 56 supporting the party's position.").